# UNITED STATES DISTRICT COURT

## WESTERN DISTRICT OF LOUISIANA

## LAFAYETTE-OPELOUSAS DIVISION

| | | |
|---|---|---|
| **DANIELLE BARKER** | * | **CIVIL ACTION NO. 05-2191** |
| **VERSUS** | * | **JUDGE MELANÇON** |
| **RENT-A-CENTER EAST, INC.** | * | **MAGISTRATE JUDGE HILL** |

## REPORT AND RECOMMENDATION

Pending before the undersigned for report and recommendation is the Motion to Dismiss Pursuant to Fed. R. Civ. P. 12(b)(1) or, in the Alternative, to Stay Proceedings and Compel Arbitration filed by defendant, Rent-A-Center East, Inc. ("RAC"). (rec. doc. 8). Plaintiff, Danielle Barker ("Barker"), has filed opposition (rec. doc. 9), as well as a sur-reply (rec. doc. 24) to defendant's reply brief. (rec. doc. 13).

## FACTUAL BACKGROUND

Barker was employed as an account manager with RAC in August, 2004. (rec. doc. 1, ¶ 4). Upon being hired by RAC, Barker signed a Mutual Agreement to Arbitrate Claims on April 26, 2004 and June 8, 2004. (rec. doc. 8, Exhibits A, B). Both agreements contain the following provisions:

> The Company [RAC] and I mutually consent to the resolution by arbitration of all claims or controversies ("claims"), past, present or future, whether or not arising out of my application for employment,

assignment/employment, or the termination of my assignment/employment that the Company may have against me or that I may have against any of the following: (1) the Company, (2) its officers, directors, employees, or agents in their capacity as such or otherwise, (3) the Company's parent, subsidiary, and affiliated entities, (4) the benefit plans or the plans' sponsors, fiduciaries, administrators, affiliates, and agents, and/or (5) all successors and assigns of any of them.

The only claims that are arbitrable are those that, in the absence of this Agreement, would have been justiciable under applicable state or federal law. The claims covered by this Agreement include, but are not limited to: claims for wages or other compensation due; claims for breach of any contract or covenant (express or implied); *tort claims*; *claims for discrimination (including, but not limited to race, sex, sexual harassment, sexual orientation, religion, national origin, age, workers' compensation, marital status, medical condition, handicap or disability)*; claims for benefits (except claims under an employee benefit or pension plan that either (1) specifies that its claims procedure shall culminate in an arbitration procedure different from this one, or (2) is underwritten by a commercial insurer which decides claims); and claims for violation of any federal, state or other governmental law, statute, regulation, or ordinance, except claims excluded in the section of this Agreement entitled "Claims Not Covered by the Agreement."

Except as otherwise provided in this Agreement, both the Company and I agree that neither of us shall initiate or prosecute any lawsuit or administrative action (other than an administrative charge of discrimination to the Equal Employment Opportunity Commission, or a similar fair employment practices agency, or an administrative charge within the jurisdiction of the National Labor Relations Board) in any way related to any claim covered by this Agreement.

(emphasis added). (rec. doc. 8, Exhibits A, B, p. 1, ¶¶ 4-6). Claims for worker's

compensation or unemployment benefits and claims requiring injunctive relief (unfair

competition and/or unauthorized disclosure of trade secrets or confidential information) are excluded. (rec. doc. 8, Exhibits A, B, p. 1, ¶ 7).

On September 21, 2005, Barker filed this action in the 19th Judicial District Court in the Parish of East Baton Rouge, Louisiana, alleging that she was terminated by RAC after she became pregnant, in violation of the Louisiana Pregnancy Discrimination Act, LSA-R.S. 23:332; LSA-R.S. 23:342, which prohibits sex discrimination, and La. Civ. Code Art. 2315 for tort damages. (rec. doc. 1). The case was removed to the United States District Court for the Middle District of Louisiana on October 11, 2005 under Docket No. 3:05-CV-01183 based on diversity of citizenship and federal question jurisdiction, as plaintiff's complaint with the Equal Employment Opportunity Commission ("EEOC") had alleged a violation of Title VII of the Civil Rights Act of 1964. (rec. doc. 4). Subsequently, the case was transferred to this Court by Order dated December 14, 2005. (rec. doc. 16).

On October 26, 2005, RAC filed the instant motion to dismiss on the grounds that Barker failed to submit her claim to arbitration as required by the agreement.[1] (rec. doc. 8). Alternatively, RAC asserts that Barker should be compelled to arbitration, and that this matter should be stayed pending arbitration. In response,

---

[1]This motion was referred to the undersigned by notice dated December 22, 2005. (rec. doc. 19).

Barker asserts that the arbitration agreement is unenforceable because of lack of consent, lack of cause or consideration, lack of mutuality, and adhesion. She further asserts that RAC has waived its right to arbitration.

## LAW AND ANALYSIS

### Right to Arbitration

RAC asserts that this action must be dismissed because Barker failed to submit her claim to arbitration. Alternatively, RAC argues that this action must be stayed pending arbitration under the Federal Arbitration Act ("FAA"), 9 U.S.C. § 1, *et seq*.

An arbitration clause is subject to the FAA if the arbitration clause is part of a valid written contract "evidencing a transaction involving commerce." *Del E. Webb Construction v. Richardson Hospital Authority*, 823 F.2d 145, 147 (5th Cir. 1987) (citing 9 U.S.C. § 2). RAC operates stores throughout the United States and sells good that are purchased out of state and are transported across state lines. (rec. doc. 8, p. 6). By signing the arbitration agreement at issue, Barker acknowledged that RAC is "engaged in transactions involving interstate commerce" and that her "assignment/employment with the Company involves such commerce."[2] (rec. doc. 8, Exhibits A, B, p. 3). Because this contract clearly involves interstate commerce,

---

[2]Under elementary principles of contract law, one is presumed to have a read a contract that one signs. *In re Cajun Elec. Power Co-op., Inc.*, 791 F.2d 353, 359 (5th Cir. 1986).

the FAA applies to this dispute.

Where the Act applies, federal law governs questions of arbitration. *Mesa Operating Limited Partnership v. Louisiana Intrastate Gas Corporation*, 797 F.2d 238, 243 (5th Cir. 1986); *Andrew Martin Marine Corp. v. Stork-Werkspoor Diesel B.V.*, 480 F.Supp. 1270, 1275 (E.D. La. 1979), *cert. denied*, 456 U.S. 989, 102 S.Ct. 2269, 73 L.Ed.2d 1284 (1982). In determining whether the parties have agreed to arbitrate the dispute in question, courts generally conduct a two-step inquiry. *PaineWebber Incorporated v. The Chase Manhattan Private Bank (Switzerland)*, 260 F.3d 453, 462 (5th Cir. 2001); *Webb v. Investacorp, Inc.,* 89 F.3d 252, 258 (5th Cir. 1996). The first step is to determine whether the parties agreed to arbitrate the dispute in question. *Id.* This determination involves two considerations: (1) whether there is a valid agreement to arbitrate between the parties; and (2) whether the dispute falls within the scope of that arbitration agreement. *Id.*

When deciding whether the parties agreed to arbitrate the dispute in question, "courts generally . . . should apply ordinary state-law principles that govern formation of contracts." *Webb, supra* (citing *First Options of Chicago, Inc. v. Kaplan*, 514 U.S. 938, 944, 115 S.Ct. 1920, 1924, 131 L.Ed.2d 985 (1995)). In applying state law, however, "due regard must be given to the federal policy favoring arbitration, and ambiguities as to the scope of the arbitration clause itself must be resolved in favor

of arbitration." *Id.* (citing *Volt Info. Sciences, Inc. v. Board of Trustees of Leland Standford Jr. Univ.*, 489 U.S. 468, 475-76, 109 S.Ct. 1248, 1253-54, 103 L.Ed.2d 488 (1989)). The second step is to determine "whether legal constraints external to the parties' agreement foreclosed the arbitration of those claims." *Id.* (citing *Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth, Inc.*, 473 U.S. 614, 628, 105 S.Ct. 3346, 3355, 87 L.Ed.2d 444 (1985)).

Under Louisiana law, formation of a valid and enforceable contract requires capacity, consent, a certain object, and a lawful cause. *Crowe v. HomesPlus Manufactured Housing, Inc.*, 877 So.2d 156, 161 (La. App. 2nd Cir. 2004); LA. CIV. CODE ANN. arts. 1918, 1927, 1966, 1971, 2029 (1991). Barker argues that the "existence of mutual assent" is not established by the agreement because she did not have cause or consideration for waiving her right to litigation. (rec. doc. 9, pp. 3-5). However, Barker signed the agreement as a condition of employment, and "employment [is] a valid cause of [a] contract." *McBride v. Mursimco, Inc.*, 2004 U.S.Dist. LEXIS 11953 (E.D. La. June 28, 2004) (quoting *Cellular One v. Boyd*, 653 So.2d 30, 34 (La. App. 1st Cir. 1995).

A similar argument was raised in *Rogers v. Brown*, 986 F.Supp. 354 (M.D. La. 1997), where plaintiff had signed an employment application containing an arbitration clause, then sued her employer for sexual harassment, battery, and

defamation. After her employer filed a motion to stay proceedings pending arbitration, plaintiff argued that the provision was not binding because she had received no consideration for agreeing to arbitrate. The court rejected this argument, reasoning as follows:

> Plaintiff's cause or consideration for this contract was employment by [employer] for which she was to be compensated. Plaintiff signed the agreement as a condition of employment, and "[e]mployment is a valid cause of [a] contract." [citation omitted]. In this case, plaintiff received consideration in the form of employment for which she was compensated, and [employer] received consideration in the form of labor to be provided by plaintiff. The mutual benefits received by plaintiff and the defendant from the employment agreement were sufficient consideration to support the contract.

*Id.* at 359-60. Because Barker's employment was a valid cause for the contract, this argument lacks merit.

Next, Barker argues that the arbitration agreement is a contract of adhesion. (rec. doc. 9, p. 5). "Generally speaking, a contract of adhesion is a standard contract, usually in printed form, prepared by a party of superior bargaining power for adherence or rejection of the weaker party." *Id.* (quoting *Welch v. A.G. Edwards & Sons, Inc.*, 677 So.2d 520, 524-25 (La. App. 4th Cir. 1996). Barker asserts that the contract is uneven and unconscionable because RAC has "vastly superior bargaining power" to extract from prospective employees the right to trial on employment discrimination claims without affording those employees a similar benefit. (rec. doc.

9, p. 7).

In support of her argument, Barker cites *Sutton's Steel & Supply, Inc. v. BellSouth Mobility, Inc.*, 776 So.2d 589 (La. App. 3rd Cir. 2001), in which the court found an arbitration clause in a standard contract used by BellSouth to be adhesionary. There, the provision was in "exceeding small print"; the customers were not in a position to bargain over the arbitration clause, and the substance of the provision was "unduly burdensome and extremely harsh." *Id.* at 597. Additionally, the court noted that while BellSouth bound customers to arbitration, it reserved for itself the right to pursue other remedies, including litigation. Thus, the court declined to recognize this adhesionary provision.

*Sutton's Steel & Supply, Inc.* is distinguishable from the present case. Here, the caption "Mutual Agreement to Arbitrate Claims" is in uppercase letters in boldface 14-point type, while the agreement itself is in standard 10-point type. Thus, the contract is not in "exceedingly small print" as was the case in *Sutton's*. Additionally, Barker had the option of not signing the agreement and finding work at another business if she did not want to be bound to arbitration. *Simpson v. Pep Boys-Manny Moe & Jack, Inc.*, 847 So.2d 617, 622 (La. App. 4th Cir. 2003). Further, the terms of the arbitration agreement are not unduly burdensome or harsh.

Barker argues in her sur-reply that the agreement is unconscionable because it compels arbitration of most of the "real world" claims that an employee might bring against RAC, while reserving to RAC the right to sue employees for "reasonably foreseeable claims." (rec. doc. 24, p. 1). However, a similar contract was held not to be unconscionably inequitable in *Simpson*. There, as in this case, the arbitration clause specified that essentially all claims between the employer and the employee would be resolved by arbitration, except those for worker's compensation or unemployment benefits and claims requiring injunctive relief. *Id.* at 619, 622. The court noted that under the contract, the employer and employee had both agreed to severe limits on the right to litigate the majority of claims they might have against each other. Thus, the court held that the agreement was enforceable. Such is the case here.

In *Ndanyi v. Rent-A-Center, Inc.*, 2004 WL 324516 (E.D. La. Dec. 11, 1004), which is cited by RAC, the identical arbitration provision was found to be valid and enforceable in an employment discrimination case. While this is an unpublished opinion, the undersigned finds that under the persuasive authority of Supreme Court and the Fifth Circuit and the liberal federal policy favoring arbitration, this dispute is subject to arbitration. *Mouton v. Metropolitan Life Insurance Company*, 147 F.3d 453, 456 (5th Cir. 1998) (citing *Moses H. Cone Hospital v. Mercury Construction*

*Corp.*, 460 U.S. 1, 24-25, 103 S.Ct. 927, 74 L.Ed.2d 765 (1983)) ("questions of arbitrability must be addressed with a healthy regard for the federal policy favoring arbitration . . . The Arbitration Act establishes that, as a matter of federal law, any doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration.").

**Waiver of Arbitration**

Finally, Barker argues that RAC has waived its right to arbitration because it failed to advise her of its intent to enforce arbitration in response to the initial claim and demand, which was served more than thirty days before suit was filed, and by resorting to judicial resolution by filing a petition for removal. Waiver will be found when the party seeking arbitration substantially invokes the judicial process to the detriment or prejudice of the other party. *Walker v. J.C. Bradford & Co.*, 938 F.2d 575, 577 (5th Cir. 1991); *Miller Brewing Company v. Fort Worth Distributing Co., Inc.*, 781 F.2d 494, 497 (5th Cir. 1986). Waiver of arbitration is not a favored finding, and there is a presumption against it. *Id.* A party asserting waiver thus bears a heavy burden of proof in its quest to show that an opponent has waived a contractual right to arbitrate. *Id.*

The record reflects that Barker filed her lawsuit on September 21, 2005. (rec. doc. 1). RAC states that it sent plaintiff's counsel a letter on October 13, 2005,

10

enclosing a copy of the arbitration agreement and demanding that she dismiss her claims. (rec. doc. 13, p. 7). The docket sheet indicates that RAC filed its answer on October 18, 2005 asserting as a defense that Barker's claims were barred by arbitration. (rec. doc. 6, ¶ 23). This does not constitute activity which "substantially invokes the judicial process" such as to constitute a waiver. *See Walker* (defendant did not waive right to arbitrate even though it waited 13 months after suit was filed to request arbitration). Accordingly, this argument lacks merit.

## Requested Relief

RAC asserts that this matter should be dismissed or, alternatively, stayed pending arbitration. Section 3 of the FAA, 9 U.S.C. § 3, provides for a stay of legal proceedings whenever the issues in a case are within the reach of an arbitration agreement. *In re Complaint of Hornbeck Offshore (1984) Corporation*, 981 F.2d 752, 754 (5th Cir. 1993). This provision is mandatory: "If the issues in a case are within the reach of the agreement, the district court has no discretion under section 3 to deny the stay." *Id*., quoting *Midwest Mechanical Contractors, Inc. v. Commonwealth Constr. Co.*, 801 F.2d 748, 751 (5th Cir. 1986).

However, this rule was not intended to limit dismissal of a case in the proper circumstances. *Fedmet Corporation v. M/V Buyalyk*, 194 F.3d 674, 678 (5th Cir. 1999); *Alford v. Dean Witter Reynolds, Inc.*, 975 F.2d 1161 (5th Cir. 1992). The

weight of authority clearly supports dismissal of the case when *all* of the issues raised must be submitted to arbitration. (emphasis in original). *Alford, supra.* Under the arbitration agreement, claimant's discrimination and tort claims would be subject to arbitration.(rec. doc. 8, Exhibits A, B, p. 1, ¶¶ 4-6). Accordingly, the undersigned recommends that this case be DISMISSED without prejudice.

### Conclusion

Based on the foregoing, it is recommended that the motion to dismiss filed by defendant, RAC, be **GRANTED,** and that this case be **DISMISSED WITHOUT PREJUDICE**.

**FAILURE TO FILE WRITTEN OBJECTIONS TO THE PROPOSED FACTUAL FINDINGS AND/OR THE PROPOSED LEGAL CONCLUSIONS REFLECTED IN THIS REPORT AND RECOMMENDATION WITHIN TEN (10) DAYS FOLLOWING THE DATE OF ITS SERVICE, OR WITHIN THE TIME FRAME AUTHORIZED BY FED.R.CIV.P 6(b), SHALL BAR AN AGGRIEVED PARTY FROM ATTACKING EITHER THE FACTUAL FINDINGS OR THE LEGAL CONCLUSIONS ACCEPTED BY THE DISTRICT COURT, EXCEPT UPON GROUNDS OF PLAIN ERROR. *DOUGLASS V. UNITED SERVICES AUTOMOBILE ASSOCIATION*, 79 F.3d. 1415 (5th Cir. 1996).**

Counsel are directed to furnish a courtesy copy of any objections or responses to the District Judge at the time of filing.

Signed this 9th day of January, 2006, at Lafayette, Louisiana.

_C. Michael Hill_
C. MICHAEL HILL
UNITED STATES MAGISTRATE JUDGE